UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
BEATA MUSIC LLC,

       Plaintiff and Counterdefendant,           Civ. No.: 18-cv-6354 (JGK) (DF)

v.

DINO DANELLI, EDDIE BRIGATI, AND DOES
2-10, inclusive,
       Defendants and Counterclaimants.      **DECLARATION OF FELIX**
--------------------------------------------------------x      **CAVALIERE IN SUPPORT OF**
DINO DANELLI and EDDIE BRIGATI,      **COUNTERDEFENDANT BEATA**
      **MUSIC, LLC'S AND THIRD-PARTY**
      **DEFENDANTS FELIX CAVALIERE**
       Third-Party Plaintiffs,      **AND GENE CORNISH'S MOTION**
      **FOR SUMMARY JUDGMENT**
v.

FELIX CAVALIERE AND GENE CORNISH,

       Third-Party Defendants.
--------------------------------------------------------x

Eric Bjorgum (Admission *pro hac vice*)
KARISH & BJORGUM, PC
119 E. Union St., Suite B
Pasadena, California 91103
Tel: (213) 785-8070
Email: eric.bjorgum@kb-ip.com

*Attorneys for Counter Defendant Beata*
*Music, LLC and Third Party Defendants*
*Felix Cavaliere and Gene Cornish*

I, Felix Cavaliere, declare the following:

1.      I am a third-party defendant in this action. All facts contained herein are within my personal knowledge and, if called as a witness, I could and would competently testify thereto. This Declaration is made in support of Counter-Defendant BEATA MUSIC, LLC and Third Party Defendants Felix Cavaliere and Gene Cornish's Motion for Summary Judgment.

2.      The Rascals were a world-renowned popular music group who have been inducted into the Rock n Roll Hall of Fame.We formed in New York, New York in 1965.  For a brief period in 1965, we were known as the Young Rascals, due to a conflict with a band called "Harmonica Rascals."   Between 1966 and 1968 we were in the top 20*Billboard* Hot 100 with nine singles, including the #1s "Good Lovin'" (1966), "Groovin'" (1967), and "People Got to Be Free" (1968), as well as hits "How Can I Be Sure?" (#4 1967), "A Beautiful Morning" (#3 1968) and "A Girl Like You" (#10 1967). The band was inducted into the Rock and Roll Hall of Fame in 1997.

3.      The original Rascals were a three piece band, featuring Felix Cavaliere on vocals and Hammond organ, Eddie Brigati on vocals and tambourine, Gene Cornish on guitar and Dino Danelli on drums.

4.      Eddie Brigati never enjoyed the rigors of touring and playing live.  In 1970, Brigatiquit the band, just as the Rascals were to sign a million dollar record deal with Columbia Records. Even with Brigati quitting, Columbia signed The Rascals, and the  terms were unchanged.

5.      The last Rascals album with Brigati, *Search and Nearness* (1969), was also the last on Atlantic Records.  Brigati had sung on three songs on the album, and I sang on six.  A Back Cover for the album were us three Rascals members on a rooftop without Brigati.

6.　　　　Guitarist Gene Cornish departed the group in 1971, leaving me and drummer Dino Danelli to fulfill the contract with Columbia.　On Columbia, the Rascals released their eighth and ninth studio albums, with me  and Danelli as the remaining members.I handled nearly all the writing and producing on these albums. Danelli and I toured extensively as the Rascals during 1971 – 1972.Brigati never objected or tried to stop the Rascals recording with Columbia Records being released nor did he try and stop the Rascals from using the name for Live Performances on those tours.

7.　　　　In 1988, the Rascals (as me, Danelli and Cornish) played at the 40th Anniversary of Atlantic Records TV SHOW. This show was watched by millions of people. Also Atlantic Records released a DVD of the 40th Anniversary that included the Rascals performance. Brigati never objected or tried to stop the RASCALS performance from being released.

8.　　　　In 1988, Myself and management team produced a " Rascals Reunion " Tour featuring Danelli, Cornish and Cavaliere. We hired Danelli and Cornish as independent contractors for their participation in the tour.The tour was so successful that after it concluded around Labor Day 1988,Danelli and Cornish wished to continue. I had other commitments so I did not want to participate. Danelli and Cornish tried to book more dates without me. My team sent them and their team cease and desist letters to not use the Rascals name without me. Eventually, in 1989, they filed a lawsuit seeking declaratory relief regarding ownership of the Rascals name.  Brigati was not party to that lawsuit, since he quit the band 18 years earlier and had nothing to do with The Rascals during this time.

9.     That suit was settled in 1990 following extensive negotiations.  The settlement was put on the record in Court, but a detailed agreement was never reached.  Attached hereto as Exhibit A is true and correct copy of the Settlement Agreement in *Dino Danelli and Gene Cornish v. Felix Cavaliere*, SDNY Case. No. 89 Civ. 3033 (LLS).___ ("the 1990 Agreement").  The 1990 Agreement deals expressly with two touring arrangements: Dino Danelli and Gene Cornish as the "New Rascals", and me as "Felix Cavaliere's Rascals."

10.     Since the 1990 Agreement, I toured non stop as Felix Cavaliere's Rascals.  I still tour using that name today.  Eddie Brigati has never objected to my live performances or tried to stop my Live performances or assert any claims on The Rascals name.

11.     There was another suit, filed in the 1990, against me by Eddie Brigati.  That suit involved Atlantic Record Master recordings, Master Use Licenses, royalty shares, ownership of the Song People Got To Be Free.  In 1992, a separate settlement agreement was entered into for that case (the "1992 Agreement"). Attached hereto as Exhibit B is a true and correct copy of the 1992 Agreement in Brigati v. Cavaliere, SDNY Case. No. 90 Civ. 6988 (KMW)

12.     To my understanding, the 1992 Agreement had nothing to do with any other Rascals business except the Atlantic Records assets defined in the agreement.

13.     Section 3 was the most troubling. It called for hiring a "Business Advisor" to oversee exploitation of certain Rascals assets.  We had one Business Advisor, but he quit after just a month or two and there has been no " Business Advisor" In place since 1992. months.  We were never able to find anyone else to take on the job. Also the Young Rascals Partnership was set up to only collect and distribute the Atlantic Records Royalties. This company has never been involved with other Rascals business, such as touring, merchandise, publishing or the Columbia Records royalties or any other new RASCALS business. It has operated like this for almost 30

years.

14.    In around 2012, I was approached by Renegade Productions to work on a proposed Broadway musical regarding the 1960s and featuring music and performances by the original Rascals. I was involved in putting this show together, and, obviously much of it incorporated my music and lyrics. It was not a Rascals Reunion Tour, it was a musical adaptation for Broadway similar to what "The Jersey Boys" show was. That show featured quotes, interviews, dramatic actors and the original four Rascals on stage for the first time since 1970. the Rascals band.

15.    The show was called "Once Upon A Dream: The Music of the Rascals."  This show had a run of dates in Port Chester, New York and a couple weeks on Broadway. The producers tried taking it out on the road but after many bad selling and cancelled shows, the Producer said the show was no longer fiscally possible to continue and cancelled it. The last show was November 29th, 2013 in Atlantic City. The producers did not make a deal with The Young Rascals Partnership. They hired each of the 4 original Rascals members as independent contractors. In fact, I was the only party to have a signed contract for my participation.

16.    There was no agreement as a group as to how we would be compensated or how the group would be presented.  There was no license agreement regarding the Rascals trademark. Nobody even addressed how any trademark rights in the phrase "Once Upon A Dream" would accrue – as to the production company or the band members.

17.    I heard Eddie Brigati's deposition during which he testified that all the original members were paid $5,000 per show. That is not correct. I was paid $7,500 per show.

18.    I hired veteran manager Obi Steinman to assess and revamp my music career and touring business. Within three years, Steinman more than tripled my income as "Felix

Cavaliere's Rascals." However, following an emotional show in Hawaii in 2017 (where the Rascals always had a large following), I decided to try to get the original group together for a final few shows as "The Rascals."One last tour to say thank you for the fans.We were all getting older, and the fans may never have a chance to see us play together again.

19.     I called Brigati about the reunion. He was not interested. Brigati had been working with Renegade Productions on an intimate club show called "After The Rascals" and did not wish to participate. He stated they might take it Las Vegas for a residency. He wished me luck and that was that.

20.     Then I called Cornish. He immediately shared my enthusiasm and said yes. Then we contacted drummer Danelli, who was very excited. However, he wanted to meet with Our manager Obi Steinman. So sometime in August or early Sept, 2017, Steinman flew to New York and met with Danelli and his rep Joe Russo. I heard the meeting went well. Our team then started trading ideas and provided Danelli with some deal points. Then Danelli demanded that I, Cornish and Steinman to travel to New York for another meeting.I spent approximately $6,000 on these trips. The meetings went well, and it appeared that we would have a reunion of me, Danelli and Cornish. However I shared my thoughts on Dino Danelli's health with Cornish and Steinman after watching Danelli try to walk across the street as we departed. Danelli claimed to us that he had not even played his drums in years, in fact since our last Broadway Musical show in November, 2013.

21.     Manager Steinman contacted our Agents at APA to organize a national tour. APA began calling venues to try and determine the band's value in the market place. Cornish and I formed Plaintiff Beata Music, LLC, which was to be the business entity for the tour participants and were the common owners would assign and share the Trademark.

22.     Eventually, old tensions began to arise. Danelli began making irrational demands and attempting to micromanage the tour as though we were still a bestselling rock group. He provided Cornish and myself approximately 12 demands. We actually agreed to something like 9 of his demands. He was relentless and one day he notified APA and the rest of our team that he would no longer participate in the tour. Then our team received threatening letters from Danelli's attorney George Gilbert. Right off the bat, Mr. Gilbert started making up settlement language from out 1990 settlement. Mr. Gilbert Claimed that there was language in the 1990 agreement that stated 3 or more original members had to tour together to use the name THE RASCALS. No such language existed.   We even offered him a royalty to stay home and allow use of the name, but we could not agree on terms. Danelli's lawyer began threatening the tour, and exploiting the 1990 Agreement's silence on proceeding with other original members.

23.     In February, 2018, this suit was filed as a declaratory relief action seeking judicial construction of the 1990 Agreement.  Specifically, we wanted to know how we could bill a show that included me and another original member.  We were considering "The Rascals featuring Felix Cavaliere and Gene Cornish."

24.     Only one show was ever put on sale as The Rascals featuring Felix Cavaliere and Gene Cornish ( Saratoga Winery). We never wanted to mislead anyone. We even went to great lengths to state we add " Special Guest" Carmine Appice on Drums. I have never seen this done before. However we did not want a single person to think Dino Danelli was performing with Gene and myself. We never even thought about replacing Eddie by adding another person on stage. The fans knew Eddie did not tour in the 42 years between quitting and the Broadway run. Shortly after the tour was announced and the show went on sale at the Saratoga Winery our Agents received a threatening letter to cease and desist. It was received from counsel for Danelli

and Brigati in California.

25.	I did not want litigation, and, as far as I know, the lawyers agreed that we could use "Felix Cavaliere and Gene Cornish's Rascals."  As stated, we  added well known drummer Carmine Appice to the tour and featured his photo, so that people would know Dino Danelli was not playing. The agreed upon name was "Felix Cavaliere and Gene Cornish's Rascals featuring Special Guest Carmine Appice on Drums." Again we wanted to be spot on with who would be performing.

26.	The tour started in Stamford, CT in July 2018.  We played six shows, and at the seventh show in Billings, Montana, Gene Cornish had a heart attack on stage during the second song. I had no idea Gene had collapsed until I saw our Manager run on stage. This was a horrific event.  A defibrillator was used on him six times, and after the seventh attempt, his heart began beating again.  The audience and band were in shock.  I was frozen watching this, especially in front of a live audience.

27.	Following this tragic incident, the tour was in jeopardy.  I do not know all of the details, but I know that Steinman had to renegotiate many shows, or many were canceled completely.  The 2018 tour eventually finished with a show at in Red Bank, NJ December 29th where Gene played again even though he had to sit on a chair.

28.	During the 2018 tour, I never heard of one incident where a fan thought that the original Rascals were playing.  In my experience, our fans are intelligent members of the "baby boomer" generation.  They know the tumultuous history of the Rascals, and they know who is playing live when they buy a ticket.  With the internet and social media, they follow me on Facebook and Brigati on Facebook. Those of us with websites and tour schedules, the fans follow us. They know whom they are going to see. They would be shocked and very surprised

they would hear about an original Rascals reunion on all social media, websites.

29.    At around this time, Beata's attorney also filed for a trademark registration on "The Rascals" for live performances and related merchandise.   As far I understood, the registration was filed as an "intent to use" registration.

30.    Over the years, there had been different musicians using "Rascals" for live performances, and I was upset that our band name was being used and had no trademark protection for live performances.   For instance, our trademark application was initially denied because of a trademark on "Divine Rascals" for live performances.   That application was filed in 2011, but the registration was abandoned in 2018, so our application proceeded and was eventually allowed.   During the publication period, Danelli and Brigati filed an opposition.

I declare under penalty of perjury under the laws of the United States that foregoing is true and correct.

Executed at Nashville, Tennessee, on January 21, 2021.

By: _Felix Cavaliere_
     Felix Cavaliere

# Exhibit A

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   -------------------------------x

3   DINO DANELLI and GENE CORNISH,

4              Plaintiffs,

5              v.                        89 Civ. 3033

6   FELIX CAVALIERE, et al.,

7              Defendants.

8   -------------------------------x

9                                       January 5, 1990
                                        12:45 p.m.
10

11  Before:

12              HON. LOUIS L. STANTON

13                                      District Judge

14              APPEARANCES

15  STEWART LEVY
         Attorney for plaintiffs

16  JOSEPH Z. EPSTEIN
    STEPHEN F. HUFF
17       Attorneys for defendants

18

19

20

21

22

23

24

25

MBKA00001

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    DINO DANELLI and GENE CORNISH,

4              Plaintiffs,

5              v.                         89 Civ. 3033

6    FELIX CAVALIERE, et al.,

7              Defendants.

8    -------------------------------x

9                                        January 5, 1990
                                         12:45 p.m.
10
     Before:
11
              HON. LOUIS L. STANTON
12
                                         District Judge
13
                   APPEARANCES
14
     STEWART LEVY
15        Attorney for plaintiffs

16   JOSEPH Z. EPSTEIN
     STEPHEN F. HUFF
17        Attorneys for defendants

18

19

20

21

22

23

24

25

MBKA00002

1              MR. EPSTEIN:  Your Honor, I am pleased to report

2     that we have reached a settlement of this action in the

3     presence of the plaintiffs Mr. Cornish and Mr. Danelli and

4     in the presence of Mr. Cavalier, who was also in the group.

5     With your permission I would like to dictate into the record

6     what that settlement is.

7              1.  It is hereby stipulated and agreed that this

8     action and all claims asserted by the plaintiffs and all

9     counterclaims asserted by the defendants are dismissed and

10    discontinued, with prejudice, each side to bear its own

11    costs and attorneys' fees.

12             2.  Plaintiffs, individually or collectively, may

13    use or exploit the name Rascals in their band only as

14    follows:  "The New Rascals, featuring Dino Danelli and Gene

15    Cornish," and any other names of individuals who they may

16    use in their band; provided that the term "Featuring Dino

17    Danelli and Gene Cornish" shall in no case be less than one

18    half the type size and prominence as "The New Rascals"; and

19    further provided that in radio ads of 30 seconds or less

20    they need not use the term "Featuring Dino Danelli and Gene

21    Cornish."

22             3.  Defendant Felix Cavalier may use or exploit

23    the name "Rascals" for his band only as follows:  "Felix

24    Cavalier's Rascals" and any other names of individuals he

25    may add to his band.

MBKA000003

1              That is the stipulation, your Honor, to which the

2     parties agree.

3              MR. LEVY:  Your Honor, I am Stewart Levy.  I

4     represent the plaintiffs.  That is the agreement.  Just to

5     clarify, when you say Cavaliere's, I believe that is

6     apostrophe S, is that correct?

7              MR. EPSTEIN:  Yes, that is correct.

8              MR. LEVY:  We agree and my clients are here and

9     they agree as well.  There are two other defendants.  I

10    assume Mr. Epstein speaks for them as well.

11             MR. EPSTEIN:  I do.

12             THE COURT:  Very well, gentlemen.  I will approve

13    that stipulation terminating this action I believe a written

14    stipulation should also be circulated and I will so order

15    that, since it will be a more convenient record of this

16    agreement than the typewritten transcript of this hearing.

17             MR. HUFF:  With the court's permission, we would

18    sign a copy of the transcript so it is known that we were

19    parties to the negotiations and file it with the court.  Is

20    that satisfactory?

21             THE COURT:  Yes.

22             MR. HUFF:  We sincerely thank the court for its

23    assistance in this settlement and saving everyone the cost

24    of litigation.

25             THE COURT:  Gentlemen, by hearing the terms of

MBKA00004

1    the stipulation I am confirmed in my belief in the truth of

2    what I said to you in the robing room yesterday, which is

3    that the parties can make a better agreement between

4    themselves with their knowledge of the business and the

5    industry and their interests than the court would have been

6    able to impose on either side.  So I congratulate you on

7    successfully having done that.

8            Thank you all.

9            (Proceeding adjourned)

10

11

12

13

14                                        

15

16

17

18

19

20

21

22

23

24

25

MBKA00005

# Exhibit B


EISENBERG TANCHUM & LEVY

477 MADISON AVENUE

NEW YORK, NEW YORK 10022

(212) 751-7777

TELECOPIER: (212) 759-2965

MICHAEL L. TANCHUM
RICHARD D. EISENBERG
STEWART L. LEVY

ELIZABETH C. McNICOLL
AMY G. LEVANTIN

LETTY M. TANCHUM
CHRISTOPHER F. MEATTO
OF COUNSEL



April 22, 1992

APR 27 1992

Mr. Edward Brigati
P. O. Box 102
Towaco, NJ 07082

    Re: **EDDIE BRIGATI——GENERAL**

Dear Eddie:

    Enclosed for your records are three copies of the settlement agreement among the members of the Rascals. One copy has your signature, another Cavaliere's and the third bears the signatures of Gene Cornish and Dino Danelli.

    I am currently in the process of boxing up your files and they should be ready to be picked up by you within the next few days.

            Sincerely,

            Stewart L. Levy

SLL/JW
Enc.
cc: Aaron Van Duyne

020401tr.150

MBKA00006

**AGREEMENT** made this 9th day of April 1992 between

EDWARD BRIGATI residing at P. O. Box 102, Towaco, New Jersey 07012

("Brigati"), GENE CORNISH residing at 170 West 23rd St. #4M, New

York, New York 10011, DINO DANELLI residing at 4 East 81st Street,

New York, New York 10028 and FELIX CAVALIERE, residing at 1120

Warrior Drive, Franklin, TN 37014 ("Cavaliere").

    **WHEREAS**, litigation is currently pending in the United

States District Court for the Southern District of New York

entitled, <u>Brigati v. Cavaliere</u>, 90 Civ. 6988 (KMW) and <u>Cornish and</u>

<u>Danelli v. Cavaliere</u>, 91 Civ. 1928 (KMW) in which Brigati, Cornish

and Danelli make certain claims regarding, among other things,

improper management of the assets of the group known as The Rascals

(both cases are hereinafter referred to jointly as the "Action");

    **WHEREAS**, Cavaliere has denied the allegations raised

in the Action and asserted counterclaims seeking to be compensated

for the reasonable value of services rendered by him; and

    **WHEREAS**, Brigati, Cornish, Danelli and Cavaliere

desire to resolve their disputes in an amicable fashion, and set

forth a framework by which the Rascals assets can be effectively

exploited in the future;

    **NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS:**

1.   <u>**Song Ownership**</u>

    Cavaliere hereby agrees that as of December 31, 1991

the authorship of the musical composition, "People Got To Be Free,"

shall be attributed fifty (50%) percent to Cavaliere and fifty (50%)

02040agr.001

MBKA00007

percent to Brigati. Cavaliere shall execute the document annexed hereto as Exhibit A notifying the United States Library of Congress, Copyright Office of this allocation, and shall execute any other documents reasonably necessary to implement this allocation.

## 2. Administration of the Rascals Assets

a. As of April 1, 1992, Brigati, Cornish, Danelli and Cavaliere, shall execute the letter of direction annexed hereto as Exhibit B directing Atlantic Records to pay all monies due Slacsar Ltd. from sales of phonorecords embodying the performances of The Rascals to the Business Adviser provided for in paragraph 2(b), below. The Business Adviser shall distribute the monies so received to each of the four members of The Rascals, Brigati, Cavaliere, Cornish and Danelli, in the following percentages:

(i) On all royalties due from the commercial exploitation of the first Rascals album entitled, "The Young Rascals", released by Atlantic Records and the master recordings contained therein twenty five (25%) percent to each of Brigati, Cavaliere, Cornish and Danelli.

(ii) On all royalties due from the commercial exploitation of all subsequent Rascals albums and released by Atlantic Records and the master recordings contained therein thirty five (35%) percent to Cavaliere, 25.78% to Gene Cornish, twenty (20%) percent to Brigati and 19.22% to Dino Danelli.

b. The Business Adviser shall be instructed to notify Atlantic Records to cease paying to Stevens Weiss, Esq. a five percent (5%) override (the "Override") on royalties otherwise

MBKA00008

due to Slacsar, Ltd. for all royalty periods beginning April 1, 1993. This notification shall not be made prior to March 1, 1993 and not after March 10, 1993 and for all royalty periods through March 31, 1993 Mr. Weiss shall continue to receive his override. In the event Atlantic Records complies with this instruction then the royalties referred to in paragraph a, above, shall be modified so that the additional five (5%) percent in royalties being received by the Business Adviser on behalf of the Rascals (which monies were formerly paid to Stevens Weiss) shall be split as follows: 1.875 percent to Cornish, 1.875 percent to Danelli, and 1.25 percent to Brigati. Cavaliere, Cornish, Brigati and Danelli agree to execute all documents necessary to effectuate this paragraph, including, but not limited to, agreements indemnifying Atlantic Records. Cornish and Danelli agree to indemnify Cavaliere out of prospective royalty proceeds with respect to any lawsuit brought by Weiss against Cavaliere with respect to the Override to the extent of the 1.25 percent interest given up by Cavaliere. Cornish and Danelli agree to retain an attorney to represent both themselves and Cavaliere should such a lawsuit take place. Provided, however, that to the extent Brigati does not elect to take his 1.25 percent of the monies otherwise due to Weiss he shall not be obligated to indemnify either Atlantic Records or Cavaliere.

      c.   Brigati, Cornish, Danelli and Cavaliere agree that all decisions concerning the commercial exploitation of The Rascals assets shall be made as follows:

         (i)  Brigati, Cornish, Danelli and Cavaliere

MBKA00009

shall use their reasonable efforts to reach an agreement on the hiring of a business adviser (the "Business Adviser") to supervise the commercial exploitation of The Rascals assets. The Business Adviser shall not be Barry Menes, Esq., Aaron Van Duyne, Arthur Erk or Bruce Kolbrenner. The Business Adviser shall be hired for a term of one year and his employment shall be continued on a year to year basis only if Brigati, Cornish, Danelli and Cavaliere all agree to the continuation. The Business Adviser may, in addition, be discharged at any time upon the unanimous decision of Brigati, Cornish, Danelli and Cavaliere. In the event Brigati, Cornish, Danelli or Cavaliere do not agree to continue the services of the Business Advisor, Brigati, Cornish, Danelli and Cavaliere agree to use their reasonable best efforts to choose replacements agreeable to all of them. In the event no such agreement can be reached within thirty (30) days Brigati, Cornish, Danelli and Cavaliere shall submit a list of possible business advisors to Magistrate Theodore Katz of the United States District Court for the Southern District of New York (or, if Magistrate Katz is unavailable, to a third party agreeable to Brigati, Cornish, Danelli and Cavaliere) whose selection for a term of one year employment from the list shall be binding on Brigati, Cornish, Danelli and Cavaliere. (This same procedure shall be employed in the event a Business Adviser is not chosen within thirty (30) days after the execution of this Agreement). All fees and expenses of or incurred by the Business Adviser relating solely to the commercial exploitation of the Rascals assets (but not to the interests of any particular members

MBKA00010

of the Rascals) shall be shared equally by Brigati, Cornish, Danelli and Cavaliere.

(ii) While nothing herein shall preclude any or all of Cavaliere, Cornish, Danelli or Brigati from having their own separate legal counsel at their own expense, all decisions in the normal course of business (e.g. involving non-exclusive licenses of Rascals assets) shall be made by the Business Adviser in his sole discretion, and he shall promptly notify Cavaliere, Cornish, Danelli and Brigati of his decisions.

(iii) All major decisions (i.e. those involving decisions not in the normal course of business such as decisions involving audits and litigation) shall be made by a majority vote of Brigati, Cornish, Danelli and Cavaliere after the Business Manager has notified them in writing at their last known business addresses with respect to the particulars of the business decision at issue (the "Notice"). If any of Brigati, Cornish, Danelli or Cavaliere fails to cast a vote on a particular business decision within ten (10) business days after mailing of the Notice to their last known address with a copy sent to the designated agents of Brigati (Aaron Van Duyne), Cornish and Danelli (Arthur Erk) and Cavaliere (Barry Menes), that member shall be deemed to have lost his right to vote on the matter contained in the Notice. In the event of a tie vote, the Business Adviser shall cast the deciding vote.

MBKA00011

### 3.   <u>Relationship With Atlantic Records</u>

a.   Cavaliere, Cornish, Danelli and Brigati shall utilize their reasonable, good faith, best efforts and instruct the Business Advisor to renegotiate with Atlantic Records in an attempt to obtain

(i)   higher royalty rates and other compensation for existing Rascals product;

(ii) the repackaging of old master recordings into new product; and

(iii) admission of The Rascals into the Rock 'N Roll Hall of Fame.

To the extent that higher royalty rates or additional compensation are obtained, the increase shall be split equally among Brigati, Cavaliere, Cornish and Danelli after all expenses incurred as a result of the renegotiations are reimbursed.

b.   Cavaliere, Cornish, Danelli agree to permit Brigati, subject to the approval of Atlantic Records, to remix already existing Rascals product sufficient to comprise no more than one long-playing phonorecord album.  Provided that such a phonorecord is released to the record-buying public Brigati shall, subject to the approval of the releasing record company, receive an additional royalty directly from Atlantic Records not to exceed three points of the United States suggested retail list price of the phonorecord from sales of that phonorecord.  This additional royalty shall be separate from the royalties otherwise due the group, and not deductible from the royalties otherwise due the group.

MBKA00012

c.   In the event Atlantic Records or any other record company releases to the record-buying public already existing Rascals product, either as originally released or recompiled, remixed by anyone other than Brigati, Cavaliere, Cornish or Danelli, Cavaliere, Cornish, Danelli and Brigati agree that each of the four members of The Rascals shall share equally in all royalties derived therefrom (i.e. 25% share to each of Danelli, Cornish, Brigati and Cavaliere).

d.   Brigati, Cavaliere, Cornish and Danelli shall share equally, after legitimate expenses have been paid, in the proceeds of any recovery obtained  as the result of an audit of Atlantic Records which is currently being undertaken on their behalf by Arthur Erk, CPA, as well as a result of any future audits of Atlantic Records or other companies relating to existing Rascals recordings.  To the extent legally possible no portion of the proceeds shall be payable to Stevens Weiss.  The Business Advisor shall supervise this audit and determine whether Mr. Erk or someone else shall conclude work in the audit.  In the event the Business Adviser determines that Mr. Erk shall conclude work on the audit Mr. Brigati shall promptly send written notification to Atlantic Records that Mr. Erk is acceptable to him.

4.   ## Publishing

a.   Cavaliere shall reasonably cooperate in any attempts, including legal actions, brought by Brigati against Coral Rock Music or its successors, including EMI Music, involving claims by Brigati that copyright ownership of musical compositions written

MBKA00013

by Brigati and by Brigati with Cavaliere revert back to Brigati and/or Cavaliere at the commencement of each composition's renewal term of copyright protection.

b.     In the event Brigati either by way of settlement or adjudication of a litigation is able to recover for Cavaliere, regardless of whether or not Cavaliere is named as a co-plaintiff with Brigati in a litigation, ownership in a composition written by Cavaliere, alone or together with Brigati, for the renewal term of a composition's copyright, then Cavaliere shall pay Brigati:

(i)   an amount equal to two times the actual monies expended by Brigati in the litigation (such sum not to exceed two times twenty five thousand ($25,000) dollars) _i.e._ fifty thousand ($50,000) dollars; and

(ii) for five years an amount equal to one half of Cavaliere's share of the publisher's share of income received by Cavaliere from the musical compositions whose copyright are recovered for their renewal terms.  Provided, however, that such payments shall not exceed, for all compositions in which copyright ownership is recovered, in total, one hundred thousand ($100,000) dollars, or be more than twenty five thousand ($25,000) dollars in any one year.

Provided, however, that Brigati shall not be entitled to any of the monies set forth in paragraphs 4(b)(i) and (ii), above, in the event Cavaliere regains ownership in a composition by means substantially of Cavaliere's own efforts.

MBKA00014

## 5. Releases

Except for the obligations contained in this agreement, Brigati, Cornish, Danelli and Cavaliere, on behalf of themselves, their agents, representatives, heirs, successors, and assigns hereby release, acquit and forever discharge each other, their respective agents, employees, successors, assigns and any persons, companies, corporations or entities acting on their behalfs of and from any and all claims, causes of action in law or equity, suits, debts, liens, contacts, agreements, obligations, promises, demands, liabilities, damages, losses, costs or expenses, of any nature whatsoever, whether presently known or unknown, fixed or contingent, which they have or ever had, against each other by reason of any matter, causes or events whatsoever arising or existing before the date of this Agreement, including, but not limited to, claims alleging breaches of fiduciary duties, slander, libel, defamation of character, breach of quasi contract, or intentional infliction of emotional distress.

## 6. Stipulation of Discontinuance

Simultaneously with the execution of this Agreement counsel for the undersigned parties shall execute and file with the Court a stipulation of dismissal of the Action with prejudice and without costs in the form annexed hereto as Exhibit B.

## 7. Governing Law and Arbitration

This Agreement shall be construed and interpreted in accordance with the laws of the State of New York. Any and all disputes as to the interpretation of or performance under this

MBKA00015

agreement shall be determined by arbitration in New York, New York, in accordance with the rules of the American Arbitration Association subject to the terms and provisions hereof and the final award in any such arbitration proceedings shall be subject to entry as a judgment by any court.

8. **Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed the Agreement as of the date first written above.

_____
FELIX CAVALIERE

_____
EDWARD BRIGATI

_____
GENE CORNISH

_____
DINO DANELLI

MBKA00016

agreement shall be determined by arbitration in New York, New York, in accordance with the rules of the American Arbitration Association subject to the terms and provisions hereof and the final award in any such arbitration proceedings shall be subject to entry as a judgment by any court.

8.  **Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed the Agreement as of the date first written above.

---

FELIX CAVALIERE

---

EDWARD BRIGATI

---

GENE CORNISH

---

DINO DANELLI

MBKA00017

agreement shall be determined by arbitration in New York, New York, in accordance with the rules of the American Arbitration Association subject to the terms and provisions hereof and the final award in any such arbitration proceedings shall be subject to entry as a judgment by any court.

8. **Counterparts**

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same instrument.

**IN WITNESS WHEREOF**, the parties hereto have executed the Agreement as of the date first written above.

FELIX CAVALIERE
_____

EDWARD BRIGATI
_____

GENE CORNISH
_____

DINO DANELLI
_____

MBKA00018

# ASSIGNMENT OF COPYRIGHT

KNOW ALL MEN BY THESE PRESENTS, that the undersigned **FELIX CAVALIERE** of _____ for and in consideration of the sum of ONE DOLLAR ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, does hereby assign, transfer and set over unto **EDWARD BRIGATI**, having his principal place of business at P. O. Box 102, Tawaco, New Jersey, such portion of my right, title and interest in and to the musical composition entitled:

## "PEOPLE GOT TO BE FREE"

which was written and composed by Felix Cavaliere and Edward Brigati, and which was registered under registration numbers EU61084 and EP255784 in the United States Copyright Office, together with any and all existing copyrights therein throughout the United States of America, Canada and the world, and any and all rights of every kind, nature or description attaching to or which may attach to said musical composition and/or included in the copyright thereof in the United States of America, Canada and throughout the world, including, but not limited to the right to secure renewals of said copyright so that the authorship of **"PEOPLE GOT TO BE FREE"** shall henceforth be attributed as follows:

**FELIX CAVALIERE —— 50%**

**EDWARD BRIGATI —— 50%**

IN WITNESS WHEREOF, the undersigned has executed the foregoing instrument on the \_\_\_\_\_ day of April 1992.

_____
**FELIX CAVALIERE**

02040ASI.001

MBKA00019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------x
EDDIE BRIGATI,                            :

          Plaintiff,      : 90 Civ. 6988 (KMW)

     -against-                           :

FELIX CAVALIERE,                          :

          Defendant.      :

-------------------------------------------X **STIPULATION AND ORDER**
                                            **OF DISCONTINUANCE**
GENE CORNISH and DINO DANELLI,            :

          Plaintiffs,     : 91 Civ. 1928 (KMW)

     -against-                           :

FELIX CAVALIERE,                          :

          Defendant.      :

-------------------------------------------X


    IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties herein that the above-entitled action, including its claims and counterclaims, having been compromised and settled, be and the same hereby is discontinued with prejudice and without costs to either party as against the other.

    IT IS HEREBY FURTHER STIPULATED AND AGREED that pursuant to the terms of an agreement between the parties dated April 9, 1992 which settled the action, this Court (Magistrate Katz) shall retain continuing jurisdiction over the parties to the extent that the Court shall, where required, appoint a Business Adviser for the

02040stp.003

*Copies Mailed to Counsel of Record 4/21/92.*

MBKA00020

parties.

Dated:     New York, New York
           April 13, 1992

                                    EISENBERG TANCHUM & LEVY
                                    Attorneys for Plaintiff
                                     Eddie Brigati

                                    By: _____
                                           Stewart L. Levy SLL-2412
                                    477 Madison Avenue
                                    New York, New York 10022
                                    (212) 751-7777

                                    GOODKIND LABATON & RUDOLF
                                    Attorneys for Plaintiffs
                                     Gene Cornish and Dino Danelli

                                    By _____
                                          Brian D. Caplan BDC-1713
                                    122 East 42nd Street
                                    New York, NY  10168
                                    (212) 490-2332

                                    ALAN NEIGHER
                                    Attorneys for Defendant
                                     Felix Cavaliere

SO ORDERED:

_____             By _____
U.S.M.J.
                                    ALAN NEIGHER
4/31/92                             1804 Post Road East
                                    Westport, CT 06880
                                    203/259-0599

02040stp.003

MBKA00021