UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

BEATA MUSIC LLC,

                    Plaintiff,

          - against -

DINO DANELLI, EDDIE BRIGATI, and
DOES 2-10, inclusive,

                    Defendants.

————————————————————————

DINO DANELLI and EDDIE BRIGATI,

     Third-Party Plaintiffs,

          - against -

FELIX CAVALIERE and GENE CORNISH,

     Third-Party Defendants.

————————————————————————

18-cv-6354 (JGK)

MEMORANDUM OPINION AND
ORDER

JOHN G. KOELTL, District Judge:

     This case concerns The Rascals—a famous music group—and a
longstanding trademark dispute over the mark associated with the
group's name. The plaintiff and counterclaim defendant Beata
Music, LLC brought this declaratory judgment and trademark
dilution action seeking a declaration of non-infringement and a
declaration that the defendants, Dino Danelli and Eddie Brigati,
have no enforceable rights in the "RASCALS" mark with respect to
live musical performances and the sale of related merchandise. The
plaintiff also seeks an injunction enjoining the defendants and
their agents from using the RASCALS mark to promote the
defendants' personal appearances, except in certain pre-approved
forms. The plaintiff also seeks an award of damages and costs.

1

The plaintiff, along with the third-party defendants Felix Cavaliere and Gene Cornish (together with the plaintiff, "the movants") have moved for summary judgment dismissing the crossclaims and counterclaims of the defendant Eddie Brigati.[1] Brigati asserts claims for declaratory relief declaring that all members of The Rascals collectively are the owners of the RASCALS and YOUNG RASCALS marks, that Cavaliere and Cornish have no right to register the RASCALS mark, and that—pursuant to two prior settlement agreements between some of the parties—at least three members of The Rascals are required to consent to any of the band members, in any combination, performing as The Rascals. Brigati also brings breach of contract claims based on the prior settlement agreements, which were executed in 1990 and 1992, respectively, as well as claims for unfair competition, unjust enrichment, and false designation of origin. Finally, Brigati seeks a permanent injunction enjoining Cavaliere and Cornish, or anyone acting on their behalf, from using the RASCALS or YOUNG RASCALS marks or attempting to register those marks without the express permission of Brigati or Danelli.

---

[1] The parties refer to Brigati's claims against the movants as "counterclaims and crossclaims," but there are no crossclaims in this case because no party has asserted any claim against a coparty. See Fed. R. Civ. P. 13(g). Brigati's claims against the plaintiff Beata Music were properly asserted as counterclaims. See Fed. R. Civ. P. 13(a). Brigati's claims against Cavaliere and Cornish, however, are not proper third-party claims because those claims do not allege that Cavaliere or Cornish are liable to Brigati for all or part of the damages claimed by Beata Music, the original plaintiff. See Fed. R. Civ. P. 14. Cavaliere and Cornish should have been joined as parties to the defendants' counterclaims under Rule 19 or 20, see Fed. R. Civ. P. 13(h), because the claims in this case directly implicate the rights of Cavaliere and Cornish and there are several questions of law and fact common to all the parties. Accordingly, the Court will resolve Brigati's claims against Cavaliere and Cornish.

The defendant Dino Danelli asserted against the movants all the same claims that are asserted by Brigati. But after answering and asserting his claims, Danelli stopped participating in this litigation. In a Memorandum Opinion and Order dated January 20, 2021, ECF No. 113, the Court granted (1) the movants' motion to dismiss all of Danelli's claims for failure to prosecute, and (2) the movants' motion for a default judgment against Danelli.

At issue in this motion are Brigati's claims against the movants.[2] For the reasons explained below, the movants' motion for summary judgment dismissing Brigati's claims is **granted**.

## I.

The Rascals are a famous music group and are inductees of the Rock and Roll Hall of Fame. Movants' Statement of Material Undisputed Facts ("MSMF"), ECF No. 133 ¶ 1. The original Rascals were a four-piece band, consisting of Cavaliere on vocals and Hammond organ, Brigati on vocals and tambourine, Cornish on guitar, and Danelli on drums. Id. ¶ 3. Brigati left The Rascals in 1970, and Cornish left the group in 1971. Id. ¶¶ 4, 6.

Years later, in 1988, Cavaliere and his managers produced a Rascals reunion tour—Cornish and Danelli were hired as contractors; Brigati did not participate. Id. ¶¶ 10-11. Danelli and Cornish then sought to continue performing as the Rascals

---

[2] In their motion for summary judgment, the movants argue that "[t]his case should come to an end with this motion." ECF No. 137, at 1. This appears to be incorrect because the plaintiff has asserted several claims that are not at issue in this motion.

without Cavaliere, but Cavaliere objected and sent a cease and desist letter. Id. ¶ 12. Danelli and Cornish filed suit against Cavaliere for declaratory relief in 1989. Id. ¶ 13. That lawsuit, to which Brigati was not a party, was settled in 1990 by a stipulation before Judge Louis Stanton in this district. See id. ¶ 14; Cavaliere Decl., ECF No. 131 ¶ 8; id. Ex. A (copy of stipulation). Under the terms of that settlement, Danelli and Cornish could perform under the name "The New Rascals, featuring Dino Danelli and Gene Cornish," subject to certain font restrictions. MSMF ¶ 15. Cavaliere could perform as "Felix Cavaliere's Rascals," including the names of any additional individuals he may add to his band. Id. While Brigati was not a party to this agreement or the underlying lawsuit, he argues that he is a third-party beneficiary of the agreement.

Brigati filed a separate lawsuit in 1990 concerning the rights to certain Atlantic Records recordings and other Rascals assets. Id. ¶ 16. This case was settled in 1992 pursuant to a written settlement agreement signed by all four members of the original Rascals. See Cavaliere Decl., Ex. B (copy of agreement).[3] This agreement purported to "set forth a framework by which the Rascals assets [could] be effectively exploited in the future." Id. at 1. The agreement sets out procedures for the allocation of

---

[3] The 1992 settlement agreement contains an arbitration provision, which the parties have not mentioned or sought to invoke. See Cavaliere Decl., Ex. B, at 9-10. Accordingly, the parties have waived the right to invoke this arbitration provision.

proceeds from the sale of Rascals recordings. See id. at 2-3. The
agreement also sets out general procedures to be followed for
future decision-making concerning the disposition of Rascals
assets. See id. at 2-5.[4] The movants argue that this agreement does
not address the issue of live performances. MSMF ¶ 17. The
agreement contains no integration clause, and it does not mention
the 1990 stipulation or purport to replace that stipulation. Id.

The four original band members—Brigati, Cornish, Danelli, and
Cavaliere—formed a "pass through" partnership in New Jersey that
distributes the revenue derived from the group's publishing and
performance rights. Id. ¶ 41. This partnership also owns the
rights to the RASCALS and YOUNG RASCALS marks for musical sound
recordings. Id. ¶ 42. There is no business entity or practice that
distributes income derived from live performances by The Rascals.
Id. ¶ 43.

Cavaliere and Danelli toured extensively as The Rascals
during 1971-1972. Id. ¶ 7. In 1988, Cavaliere, Danelli, and
Cornish performed as The Rascals at a show celebrating the 40th
anniversary of Atlantic Records. Cavaliere Decl. ¶ 7. Also in
1988, there was a Rascals reunion tour in which Cavaliere,
Danelli, and Cornish performed as the Rascals; Brigati did not

---

[4] The agreement calls for the hiring of a "business advisor" to "supervise the
commercial exploitation of The Rascals assets." Cavaliere Decl., Ex. B, at 4.
The business advisor was to be hired for one-year terms, and the advisor's
employment was to be continued only if all four of the original Rascals agreed
to the continuation. Id. The parties appear to agree that—if there ever was a
business advisor—there has been no business advisor since 1993. See ECF No. 137,
at 22-23; ECF No. 149, at 16; Cavaliere Decl. ¶ 13.

participate. Id. ¶ 8; MSMF ¶ 10. Cavaliere toured as "Felix

Cavaliere's Rascals" throughout the 1990s and 2000s. Id. ¶ 20. In

2012 and 2013, the four original members of the band performed

together in a musical entitled "The Rascals: Once Upon a Dream."

Id. ¶ 24. The musical became unprofitable and was canceled that

same year. Id. This was the first time since 1970 that the four

original band members had toured together. Id. ¶ 22.

In 2017, Cavaliere proposed a final Rascals tour with the

original, four-member group. Id. ¶ 27. Cornish agreed to

participate, but Brigati declined. Id. ¶¶ 28-29. Danelli initially

agreed, but ultimately backed out and sought to put an end to the

tour after negotiations soured. Id. ¶ 30. Cavaliere and Cornish

created a "touring company" called Beata Music, LLC, and

transferred to Beata "any rights they had in the RASCALS mark for

live performances." Id. ¶ 33. In February 2018, Beata filed an

intent-to-use trademark application for "THE RASCALS" for live

performances and related clothing. Id. ¶ 34. Beata received a

notice of publication, but Brigati and Danelli filed an opposition

in the United States Patent and Trademark Office Trial and Appeal

Board, where the application is stayed pending the resolution of

this case. Id.; Bjorgum Decl., ECF No. 138 ¶ 4.[5]

The 2018 tour was initially billed as "The Rascals featuring

Felix Cavaliere and Gene Cornish with Special Guest Carmine Appice

---

[5] In their reply, the movants state that this application "may soon be
dismissed" because the four original band members "will not be playing together
again." ECF No. 151, at 9.

on Drums." MSMF ¶ 35. However, after negotiations between the
movants and counsel for Brigati and Danelli, the parties agreed
that the tour would be billed as "Felix Cavaliere and Gene
Cornish's Rascals." Id. ¶ 37. Beata's team developed promotional
materials for the 2018 tour to be used by every promoter. Id. ¶
38. There was no representation that Brigati or Danelli would
perform, and venues received specific instructions about using the
correct name of the performing act—"Felix Cavaliere and Gene
Cornish's Rascals with Special Guest Carmine Appice"—including
instructions about font size and clarification that the tour was
not a Rascals reunion show. Id. ¶ 39. Only approved materials were
allowed to be used in advertising the show. Id. The tour took
place, but it was not profitable because Cornish missed much of
the tour due to health issues and many venues canceled or
requested reduced fees. Id. ¶ 40.

Brigati's claims primarily focus on the 2018 tour and Beata's
application for the RASCALS mark with respect to live performances
and related merchandise.

**II.**

The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317,

322-23 (1986).[6] "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gallo, 22 F.3d at 1223. "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving

---

[6] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

party meets its burden under Rule 56, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of N.Y., 996 F.2d 522, 532 (2d Cir. 1993).

### III.

The movants argue that all of Brigati's legal claims fail because Brigati has not shown any damages.

Brigati brings two breach of contract claims: one for the 1990 stipulation, and another for the 1992 settlement agreement. Both of these agreements are governed by New York law:[7] the 1992 agreement contains a choice-of-law provision in favor of New York;[8] the claim concerning the 1990 agreement is governed by New York law under New York's choice-of-law rules, and no party seeks to invoke the law of a different jurisdiction.[9]

Under New York law, damages are an essential element of a breach of contract claim. Hausen v. North Fork Radiology, P.C., 98

---

[7] The movants assume, without any analysis, that New York law governs both agreements. See ECF No. 137, at 18–23. Brigati does not address the issue of choice of law at all. See ECF No. 149, at 15–17.

[8] See Cavaliere Decl., Ex. B, at 9–10. No party argues that the choice-of-law provision is invalid.

[9] Federal courts adjudicating state-law claims apply the choice-of-law rules of the forum state. See Brooks v. Dash, No. 19-cv-1944, 2019 WL 5797971, at *5 (S.D.N.Y. Oct. 2, 2019) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)). "New York courts apply a 'center of gravity' approach in choosing which state's law to apply in adjudicating a contract claim," whereby "courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." Id. The 1990 agreement was executed in New York, it appears that some of the contracting parties were based in New York, and no parties have pointed to significant contacts in any other jurisdiction. Accordingly, New York law applies to Brigati's contract claim with respect to the 1990 agreement.

N.Y.S.3d 224, 229 (App. Div. 2019); In re M/V MSC FLAMINIA, 229 F. Supp. 3d 213, 219 (S.D.N.Y. 2017). In this case, Brigati has failed to offer any damages calculation or evidence of damages. Moreover, under the Federal Rules of Civil Procedure, it is too late for Brigati to offer evidence of damages. Rule 26(a)(1)(A)(iii) provides that a party must provide: "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." A party also has a duty to supplement disclosures under Rule 26(a) "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Brigati's initial disclosures did not contain a damages theory or calculation, and those disclosures were never updated. See MSMF ¶ 44; Bjorgum Decl., Ex. D, at 2 (copy of Brigati's initial disclosures). The damages section of Brigati's initial disclosures simply lists Brigati's claims and states that his "claims for damages require discovery to be properly calculated." Id. Brigati does not dispute that he has failed to provide a damages calculation. Rather, Brigati argues that this

fact is "immaterial because actual damages are difficult to assess," and because Brigati seeks statutory damages. ECF No. 149, at 7.

Rule 37(c)(1) provides that, "[i]f a party fails to provide information . . . required by Rule 26(a) . . ., the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." While the Court has discretion to impose other sanctions short of preclusion, see Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006), preclusion is appropriate in this case. Brigati has not offered any explanation for failing to include a damages calculation in his Rule 26 disclosures, Brigati's failure is not harmless, and even at this stage Brigati does not contend that he is able to proffer any damages calculation. Indeed, "[a] plaintiff's failure to disclose a computation of damages in her initial disclosure is alone sufficient to preclude her from submitting evidence of it at trial." Okeke v. N.Y. and Presbyterian Hosp., No. 16-cv-570, 2017 WL 2484200, at *3 (S.D.N.Y. June 6, 2017). Because Brigati has offered no justification for failing to provide a damages calculation, and because he has not demonstrated the willingness or capability to provide evidence of damages now at the summary judgment stage, Brigati is precluded from offering any damages evidence. See id. Accordingly, Brigati's contract claims fail as a matter of law. Cf. Use Techno Corp. v. Kenko USA, Inc., No. c-06-

2754, 2007 WL 4169487, at *4 (N.D. Cal. Nov. 20, 2007) (dismissing plaintiffs' false advertising claim at the summary judgment stage because plaintiffs failed to disclose a damages calculation and damages are an essential element of a false advertising claim).

Brigati's contract claim with respect to the 1990 agreement also fails for the independent reason that Brigati was not a party to that agreement or the underlying lawsuit. Brigati claims that he was an intended third-party beneficiary of the agreement, which would allow him to enforce the agreement. See Consolidated Edison, Inc. v. Ne. Utils., 426 F.3d 524, 527 (2d Cir. 2005) (applying New York law). "A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit and (3) that the benefit to it is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost." Alpha Phi Alpha Senior Citizens Ctr., Inc. v. Zeta Zeta Lambda Co., Inc., 119 N.Y.S.3d 181, 184 (App. Div. 2020).[10] Brigati has not established that the 1990 agreement was intended for his benefit. When the 1990 agreement was executed, Brigati had not been a performing member of the band for twenty years. MSMF ¶ 4. The terms of the 1990 agreement address only how Danelli, Cornish, and Cavaliere may use The Rascals name. The 1990 agreement does

---

[10] Brigati does not attempt to satisfy this standard; he simply asserts that he "clearly has rights" under the 1990 agreement. ECF No. 149, at 16.

not mention Brigati, and the parties to that agreement did not evince any intent to benefit Brigati. Accordingly, Brigati is not a third-party beneficiary to the 1990 agreement and he cannot enforce that agreement.

Brigati's contract claim with respect to the 1992 agreement also fails for the independent reason that the 1992 agreement does not address live performances and it does not supersede the 1990 agreement. Brigati claims that Cavaliere and Cornish violated the 1992 agreement by: assigning their rights in the RASCALS mark to Beata, directing Beata to file a trademark application for the RASCALS mark, attempting to use the RASCALS mark for live performances and merchandising without the consent of Danelli and Brigati, and using the image and likeness of Danelli and Brigati.

"When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and the parties' reasonable expectations." Dysal, Inc. v. Hub Props. Trust, 938 N.Y.S.2d 642, 644 (App. Div. 2012). The terms of the 1992 agreement do not address use or ownership of the RASCALS mark generally, or the issue of live performances in particular. Nothing in the 1992 agreement purported to divest Cavaliere or Cornish of their rights under the 1990 agreement. Brigati nonetheless claims that the 1992 agreement governs the use of the RASCALS mark for live performances. In

13

support of that argument, Brigati emphasizes the following

provision of the agreement:

> All major decisions (i.e. those involving decisions not in
> the normal course of business such as decisions involving
> audits and litigation) shall be made by a majority vote of
> Brigati, Cornish, Danelli and Cavaliere after the Business
> Manager [sic] has notified them in writing at their last
> known business addresses with respect to the particulars
> of the business decision at issue (the "Notice"). If any
> of Brigati, Cornish, Danelli or Cavaliere fails to cast a
> vote on a particular business decision within ten (10)
> business days after mailing of the Notice to their last
> known address with a copy sent to the designated agents of
> Brigati (Aaron Van Duyne), Cornish and Danelli (Arthur
> Erk) and Cavaliere (Barry Menes), that member shall be
> deemed to have lost his right to vote on the matter
> contained in the Notice. In the event of a tie vote, the
> Business Adviser shall cast the deciding vote.

Cavaliere Decl., Ex. B, at 5.

That provision does not apply to these circumstances. First,

Brigati has offered no evidence that the use of the RASCALS mark

or the use of Brigati's likeness constitute "major decisions" akin

to audits and litigation, as distinguished from "decisions in the

normal course of business (e.g. involving non-exclusive licenses

of Rascals assets)." See id. Moreover, the provision Brigati

relies on is inoperative because at no relevant time was there a

business advisor, a written notice of any decision, or a vote by

any of the band members—which would have been required within ten

days of any notice. Brigati seeks to fall back on New York

partnership law, but New York partnership law is inapplicable

because the band members' partnership, the Young Rascals, was

formed under New Jersey law. MSMF ¶¶ 41-42.

Accordingly, both of Brigati's breach of contract claims fail. Moreover, Brigati's claim for statutory damages under 17 U.S.C. § 504(c), the Copyright Act, fails because this is not a copyright case. Even if Brigati had invoked the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), such a claim would fail because there is no allegation of counterfeiting in this case.

## IV.

Brigati also brings claims for unfair competition under New York common law, and for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Section 43(a) prohibits a person from using "any word, term, name, symbol . . . which is likely to cause confusion . . . or to deceive as to the affiliation . . . or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" 15 U.S.C. § 1125(a)(1)(A). To establish a false designation of origin claim, a "plaintiff must establish that 'it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion.'" Krasnyi Oktyabr, Inc. v. Trilini Imports, 578 F. Supp. 2d 455, 467 (E.D.N.Y. 2008) (quoting Morningside Group Ltd. v. Morningside Capital Group, L.L.C., 182 F.3d 133, 137 (2d Cir. 1999)). "[T]he elements of a cause of action for New York common law infringement and for unfair competition mirror the requirements of claims stated under the Lanham Act and similarly require that a party demonstrate a valid,

15

protectable mark and a likelihood of confusion between the marks of the alleged infringer and the charging party." Ritani, LLC v. Aghjayan, 880 F. Supp. 2d 425, 448 (S.D.N.Y. 2012) (citing Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 101 n.6 (2d Cir. 2010)).

**A.**

The parties agree that the Young Rascals partnership, of which Brigati is a member, owns trademarks in the RASCALS and YOUNG RASCALS marks for musical sound recordings. The movants argue, however, that Brigati has abandoned his interest in the RASCALS mark. "Abandonment of a mark under 15 U.S.C. § 1127 requires both 'non-use of the mark by the legal owner' and 'no intent by that person or entity to resume use in the reasonably foreseeable future.'" Pado, Inc. v. SG Trademark Holding Co. LLC, 527 F. Supp. 3d 332, 336 (E.D.N.Y. 2021) (quoting Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 169 (2d Cir. 2016)). Non-use of the mark for three consecutive years constitutes "prima facie evidence of abandonment." 15 U.S.C. § 1127. The Second Circuit Court of Appeals has explained that "'prima facie evidence' in this context means 'a rebuttable presumption of abandonment.'" ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 147 (2d Cir. 2007). "The significance of a presumption of abandonment is to shift the burden of production to the mark owner to come forward with evidence indicating that, despite three years of non-use, it intended to resume use of the mark within a reasonably foreseeable time." Id. at 148. The party asserting

abandonment bears the ultimate burden of proving abandonment by clear and convincing evidence. Pado, 527 F. Supp. 3d at 341.

The movants have met their burden of proving abandonment in this case. It is undisputed that Brigati left the band in 1970, and Brigati cannot point to any use of the RASCALS mark between 1970 and 2012, when the group reunited to perform the Once Upon a Dream musical. Brigati certainly has not demonstrated "deliberate and continuous" use of the RASCALS mark since 1970, which would be required to rebut a finding of nonuse. See id. at 342. Cavaliere and Danelli toured extensively as The Rascals in 1971-1972, without Brigati. MSMF ¶ 7. Brigati did not attempt to join the 1988 Rascals reunion tour, which featured the other three members of the original band; nor did he object to that tour. See Cavaliere Decl. ¶ 8. Brigati also did not participate in the 1988 performance by The Rascals at the show celebrating the 40th anniversary of Atlantic Records. Id. ¶ 7. Moreover, Cavaliere toured throughout the 1990s and 2000s as "Felix Cavaliere's Rascals." MSMF ¶ 20. Brigati has failed to show that he performed even one time under any version of The Rascals name between 1970 and 2012.

Brigati also was not a party to the lawsuit that culminated in the 1990 settlement agreement, which concerned use of the RASCALS mark for live touring. While Brigati was a party to a subsequent lawsuit concerning Rascals assets (which culminated in the 1992 settlement agreement) and claims to have sent a cease and

desist letter when Cavaliere and Cornish were touring as The Rascals, this does not constitute "bona fide use" within the meaning of 15 U.S.C. § 1127.

Bona fide use of a mark entails "endeavoring to exploit the value" of the mark, and taking action to "rekindle the public's identification of the mark with the proprietor." See Silverman v. CBS Inc., 870 F.2d 40, 47-48 (2d Cir. 1989). For the vast majority of the time between 1970 and the present, Brigati did not use the RASCALS mark in this way. See also id. ("[C]hallenging infringing uses is not use."). Moreover, any use of the mark by Brigati since 1970 was not "deliberate and continuous," see Pado, 527 F. Supp. 3d at 342. The record is clear that, while other members of the original Rascals continued to exploit the value of the RASCALS mark after 1970 by touring and recording new music, Brigati did not. Brigati even turned down opportunities to tour with The Rascals and bolster his association with the mark. See, e.g., MSMF ¶ 28. That Brigati continues to receive royalties from the group's recorded music does cut against abandonment. See Kingsmen v. K-Tel Int'l Ltd., 557 F. Supp. 178, 183 (S.D.N.Y. 1983) (Sand, J.). But in this case, unlike Kingsmen, The Rascals-as the group is perceived by the public—did not completely stop touring and recording. See id. While the other band members continued to actively exploit the RASCALS mark and associate themselves with it, Brigati did not. See Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 851 (2d Cir. 1992) ("A trademark must be used or lost to

18

another economic actor more willing to promote the mark in commerce."). Accordingly, the movants have met their burden of showing that Brigati has abandoned his interest in the RASCALS mark.[11]

Brigati also cannot establish common law trademark rights in the RASCALS mark. "Common law trademark rights derive from 'initial appropriation and use accompanied by an intention to continue exploiting the mark commercially.' 'To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory.'" Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 897 F.3d 413, 418 (2d Cir. 2018) (quoting La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271-72 (2d Cir. 1974)). Brigati cannot establish deliberate and continuous use of the RASCALS mark after he left the band in 1970. Moreover, Brigati has abandoned any common law rights he may have had in the RASCALS mark. See Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1043 (2d Cir. 1980) ("[I]t is appropriate to apply federal law [on the issue of

---

[11] In addition to a declaration that the band members collectively own the RASCALS mark, Brigati seeks a declaration that the band members collectively own the YOUNG RASCALS mark. The movants simply state that the YOUNG RASCALS mark "is not at issue" in this case. ECF No. 151, at 9. Declaratory judgment actions "are justiciable only in cases in which an 'actual controversy' exists." Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) (citing 28 U.S.C. § 2201(a)). In this case, there is no actual controversy concerning ownership of the YOUNG RASCALS mark. All parties agree that the Young Rascals partnership owns the YOUNG RASCALS mark for musical sound recordings. The movants are not seeking to use that mark, and they have only filed an intent-to-use application for the RASCALS mark. Accordingly, the portion of Brigati's declaratory judgment action that concerns ownership of the YOUNG RASCALS mark presents only an abstract question and is not justiciable.

abandonment] by analogy, with respect to both the state and federal claims."); 3 McCarthy on Trademarks and Unfair Competition § 17:1 (5th ed. 2021) ("State law uses the same definition of 'abandonment' of a mark as does federal law.").

**B.**

Brigati's federal and state trademark infringement claims also fail for the independent reason that he cannot show a likelihood of confusion. Likelihood of confusion is required under both the common law and the Lanham Act. See 15 U.S.C. § 1125(a); Ritani, 880 F. Supp. 2d at 448. Brigati, the party charging infringement, has the burden of proving likelihood of confusion. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 118 (2004).

In an effort to show a likelihood of confusion, Brigati points to the movants' promotional materials for the 2018 tour of a group consisting of Cavaliere and Cornish. Brigati alleges that the movants used Brigati's image and likeness to promote the tour without Brigati's permission, and that the promotional materials for the 2018 tour were confusing and deceptive. But the promotional materials that were displayed to the public prominently featured the name of the touring group as "FELIX CAVALIERE & GENE CORNISH'S RASCALS." See ECF No. 137, at 17. This is not likely to cause confusion. First, the promotional materials made it clear that the 2018 tour was not being performed by the original Rascals. See Kingsmen, 557 F. Supp. at 183-84 (indicating

that there would have been no likelihood of confusion if the former member of a disbanded music group had truthfully represented his association with the original group); Kassbaum v. Steppenwolf Prods., Inc., 236 F.3d 487, 493 (9th Cir. 2000) (no likelihood of confusion where former member of Steppenwolf was identified as "Formerly of," "Original Member of," or "Original Founding Member of" Steppenwolf in a different band's promotional materials). Second, the promotional materials did not indicate that Brigati would be performing with the group: the name of each performer was listed in the advertisements, and venues were explicitly instructed that the tour was not a Rascals reunion. Moreover, the public's expectations would have been informed by the fact that Brigati had not performed as a member of The Rascals after 1970, with the exception of the Once Upon a Dream musical in 2012-2013.

Brigati emphasizes that the promotional materials made some minimal use of album artwork containing Brigati's likeness and of songs that were written and recorded by the original Rascals. But this is permissible under the trademark laws because the promotional materials were not likely to confuse or deceive, and the advertisements explicitly stated who would be performing. This is unlike the situation in Kingsmen, where Judge Sand found a likelihood of confusion because an album purported to contain "Re-recordings by the original artists," when in fact the song at issue was recorded by only one member of a five-member band that

had disbanded and had ceased performing and recording. See 557 F.
Supp. at 182. Here, by contrast, the advertisements created by the
movants nowhere indicated that the original Rascals—or Brigati in
particular—would be performing. Nor did the advertisements
indicate that Brigati or Danelli sponsored or approved of the
tour.

Brigati fails to address the test that controls the
likelihood of consumer confusion analysis in the Second Circuit—
the eight-factor Polaroid balancing test:

> The eight factors are: (1) strength of the trademark; (2)
> similarity of the marks; (3) proximity of the products and
> their competitiveness with one another; (4) evidence that
> the senior user may "bridge the gap" by developing a
> product for sale in the market of the alleged infringer's
> product; (5) evidence of actual consumer confusion; (6)
> evidence that the imitative mark was adopted in bad faith;
> (7) respective quality of the products; and (8)
> sophistication of consumers in the relevant market.

Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec.
Univ., LLC, 823 F.3d 153, 160 (2d Cir. 2016) (citing Polaroid
Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961)). "The
application of the Polaroid test is not mechanical, but rather,
focuses on the ultimate question of whether, looking at the
products in their totality, consumers are likely to be confused."
Id.

The Polaroid factors do not favor Brigati. Brigati presents
no evidence of the strength of the RASCALS mark or of actual
consumer confusion—stemming from Cavaliere and Cornish's 2018 tour
or otherwise. Factors two, three, four, and seven are inapplicable

because Brigati has provided no evidence that he has had an active career as a musician after he left The Rascals in 1970. Finally, Brigati cannot show any bad faith on the part of the movants: to the contrary, the movants took pains to clarify in the promotional materials for the 2018 tour (the tour at the heart of Brigati's infringement claims) that Cavaliere and Cornish were the only members of the original Rascals who would be performing. The eighth factor does not affect the analysis here.

The movants also argue convincingly that any use of Brigati's likeness or voice in the promotional materials for the 2018 tour constitutes "nominative fair use" because: (1) the promotional materials' use of Rascals music and album artwork—and concomitant use of Brigati's likeness—was necessary to describe the service being offered on the 2018 tour; (2) the movants used only as much of Brigati's likeness and voice as was necessary to identify their service; and (3) the movants took pains to ensure that their promotional materials reflected the true and accurate relationship between Cavaliere and Cornish's 2018 tour and the two non-touring band members. See Int'l Info. Sys., 823 F.3d at 168. This further cuts against a likelihood of confusion.

Accordingly, Brigati cannot show a likelihood of confusion, which constitutes an independent ground for dismissing his federal and state trademark infringement claims.[12]

---

[12] Brigati also complains that the website Ticketmaster billed Cavaliere and Cornish's 2018 tour as "The Rascals Tour." But Ticketmaster is not a party to this action, and Brigati has produced no evidence showing that the movants were

### c.

A third independent reason that Brigati's Lanham Act claim

fails is Brigati's inability to establish statutory standing.

> [I]n order to state a plausible false association claim
> based on the deceptive and misleading use of marks,
> including a false designation of origin claim, under the
> Lanham Act, the plaintiff must plead factual allegations
> from which it may reasonably be inferred that it sustained
> "an injury to a commercial interest in sales or business
> reputation," proximately caused by the defendant's
> conduct, i.e., its deceptive and misleading use of the
> plaintiff's marks, false designation of origin, etc.

Millennium Access Control Tech., Inc. v. On the Gate, LLC, No. 15-

cv-6067, 2017 WL 10445800, at *12 (E.D.N.Y. Feb. 14, 2017)

(quoting Lexmark Int'l, Inc. v. Static Control Components, Inc.,

572 U.S. 118, 140 (2014)) (collecting cases applying Lexmark's

statutory standing test to claims brought under 15 U.S.C. §

1125(a)(1)(A)). As discussed in the context of Brigati's contract

claims, there is no dispute of material fact as to whether Brigati

has suffered commercial or reputational damages. Brigati has not

offered any proof of such damages. Accordingly, Brigati has failed

to satisfy the test for statutory standing for a claim of false

designation of origin under the Lanham Act.

---

responsible for how Ticketmaster promoted the 2018 tour. The record shows that
the movants carefully crafted their promotional materials to reflect accurately
who would be performing, that those materials were edited in response to
negotiations with counsel for Brigati, and that venues received specific
instructions regarding how to promote the 2018 tour in a manner that would not
confuse or deceive. See MSMF ¶¶ 34-39.

## D.

A fourth and final reason why Brigati's federal and state trademark infringement claims fail is the equitable doctrine of laches. The defense of laches is applicable to Lanham Act claims and New York state law claims of trademark infringement. See Harley-Davidson, Inc. v. O'Connell, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998).

> Defendant's proof in its laches defense must show that plaintiff had knowledge of defendant's use of its marks, that plaintiff inexcusably delayed in taking action with respect thereto, and that defendant will be prejudiced by permitting plaintiff inequitably to assert its rights at this time. Obviously, whether the claim is sufficient to bar relief, depends upon a consideration of the circumstances of each particular case and a balancing of the interests and equities of the parties.

Cuban Cigar Brands N. V. v. Upmann Int'l, Inc., 457 F. Supp. 1090, 1096 (S.D.N.Y. 1978) (Weinfeld, J.), aff'd, 607 F.2d 995 (2d Cir. 1979). In the Second Circuit, "a presumption of laches applies in a trademark action if the plaintiff fails to bring suit within the six-year statute of limitations applicable to state-law fraud in New York." Harley-Davidson, 13 F. Supp. 2d at 279; see George Nelson Found. v. Modernica, Inc., 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014).

In this case, the movants have established that Brigati had knowledge of their use of the RASCALS mark for decades before bringing this suit. While it is true that some of the facts underlying Brigati's claims occurred in 2018, Brigati was aware of several instances in which Cavaliere and other members of the

original band had performed under some variation of The Rascals name since Brigati left the band in 1970. Cavaliere and Danelli toured extensively as the Rascals during 1971-1972, MSMF ¶ 7, and Brigati was aware of the 1988 Rascals reunion tour in which the other three band members participated, see ECF No. 148, at 4. Brigati claims to have objected to these shows, but he did not bring suit to enforce any trademark rights he may have had, and he was not involved in the 1990 settlement agreement that outlined how the RASCALS mark would be used by the band members moving forward. The only litigation that Brigati was involved in did not concern the use of the RASCALS mark.

Brigati offers no justification for his delay, and the movants would be prejudiced if Brigati were allowed to sit idly by for decades while others made productive use of the RASCALS mark, only to assert trademark infringement claims when a lawsuit was filed against him. The movants would also be prejudiced because the record clearly establishes that Brigati, through counsel, assented to many of the uses of the RASCALS mark that he now contends amount to infringement. See, e.g., MSMF ¶ 37.[13]

---

[13] Brigati denies this fact, ECF No. 148, at 11, but it is unclear on what basis. Documentary evidence clearly establishes that an attorney who identified himself as counsel for Brigati contacted the talent agency responsible for promoting the 2018 tour, and that Brigati's counsel consented to the promotion of all shows under the name "Felix Cavaliere and Gene Cornish's Rascals." Steinman Decl., ECF No. 140, Exs. K-L.

## V.

Brigati's remaining claims also fail. Brigati's claims for declaratory relief fail because: (1) Brigati has abandoned his interest in the RASCALS mark; (2) any declaratory judgment action concerning the ownership of the YOUNG RASCALS mark presents an abstract, nonjusticiable question; and (3) the settlement agreements from 1990 and 1992 do not require at least three of the band members to consent to any of the band members performing as The Rascals. The Court takes no position on how the Trademark Trial and Appeal Board should dispose of Beata's intent-to-use trademark application for the RASCALS mark for live performances and related clothing.[14]

Brigati's unjust enrichment claim fails because he did not perform any service for the movants that conferred a specific and direct benefit on the movants. See Agerbrink v. Model Service LLC, 155 F. Supp. 3d 448, 458 (S.D.N.Y. 2016).

Finally, Brigati's claim for a permanent injunction fails because he has not succeeded on the merits of any claim, he has not suffered an irreparable injury, the equities do not tip in his favor, and an injunction would not be in the public interest. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

---

[14] Brigati asserts that Cavaliere made a similar application in 1988 that was denied with prejudice. In any event, the movants state that Beata may soon withdraw the pending application. See ECF No. 151, at 9. If the application is not withdrawn, the Trademark Trial and Appeal Board can address this issue in the first instance.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the movants' motion for summary judgment dismissing all of Brigati's claims is **granted.**

The Clerk is directed to close Docket Nos. 129, 137, 150, and 156.

**SO ORDERED.**

Dated:    New York, New York
          January 6, 2022

                                    John G. Koeltl
                            United States District Judge