UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

BEATA MUSIC LLC,

                        Plaintiff,                    18-cv-6354 (JGK)

          - against -                                 MEMORANDUM OPINION
                                                      AND ORDER
DINO DANELLI, EDDIE BRIGATI, and
DOES 2-10, inclusive,

                        Defendants.
_____

 DINO DANELLI and EDDIE BRIGATI,

          Counterclaim Plaintiffs,

          - against -

 BEATA MUSIC LLC, FELIX CAVALIERE,
 and GENE CORNISH,

          Counterclaim Defendants.
_____

JOHN G. KOELTL, District Judge:

     These motions mark another chapter in a long-running

trademark dispute over the mark associated with the famous music

group The Rascals. The prior harmony among the parties has

turned to discord.

     The background of this litigation is set forth in detail in

this Court's Memorandum Opinion and Order dated January 6, 2022,

see Beata Music LLC v. Danelli, No. 18-cv-6354, 2022 WL 61862,

at *1-3 (S.D.N.Y. Jan. 6, 2022) ("Beata II"), with which the

Court assumes familiarity.[1] In that decision, the Court granted the motion for summary judgment brought by Beata Music LLC ("Beata"), Felix Cavaliere, and Gene Cornish (together, "the movants") dismissing all the counterclaims asserted by Eddie Brigati. In an earlier Memorandum Opinion and Order, the Court granted (1) the movants' motion to dismiss the claims asserted by Dino Danelli (the fourth Rascal) for failure to prosecute, and (2) Beata's motion for a default judgment against Danelli. See 2021 WL 195708 (S.D.N.Y. Jan. 20, 2021) ("Beata I").

Now before the Court is the movants' motion for attorney's fees and Beata's motion for summary judgment with respect to its own claims. For the reasons explained below, the motion for attorney's fees is **denied** and the motion for summary judgment is **granted in part and denied in part**.

I.

The movants move for attorney's fees pursuant to the Lanham Act, which provides that, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).[2]

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

[2] At the outset, Brigati argues that the movants' motion is premature because there is currently no final judgment in the case under Federal Rule of Civil Procedure 54. This argument is unpersuasive because Rule 54(d)(2)(B), which generally governs the timing of a motion for attorney's fees, only explicitly sets a deadline by which a motion for attorney's fees must be filed; it does not prohibit the filing of such a motion before the entry of judgment. See Keister v. PPL Corp., 677 F. App'x 63, 68-69 (3d Cir. 2017) ("Under Rule 54,

A prevailing party is "one who has been awarded some relief by the court." Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Res., 532 U.S. 598, 603 (2001). "The essence of being a prevailing party is achieving a material alteration of the legal relationship of the parties that is judicially sanctioned." Lifeguard Licensing Corp. v. Kozak, 371 F. Supp. 3d 114, 130 (S.D.N.Y. 2019). In Beata II, the Court concluded that Brigati's counterclaims failed as a matter of law because, among other reasons: (1) Brigati has no common law trademark rights in the RASCALS mark, (2) Brigati abandoned any interest he had in the RASCALS mark, and (3) the 1990 and 1992 settlement agreements between some of the parties do not require at least three of the band members to consent to any of the band members performing as The Rascals. See Beata II, 2022 WL 61862, at *7-8, *11. Those rulings materially altered the legal relationship between the parties. Moreover, as explained in Section II of this Memorandum Opinion and Order, those rulings also ensured that Beata would prevail on certain of its

---

a motion for attorney's fees shall 'be filed no later than 14 days after the entry of judgment.' Nothing in the text of the rule indicates that filing before entry of judgment is improper and Russo offers no legal authority to persuade us otherwise."). Rule 54(d)(2)(B) also makes clear that its timing provision applies "[u]nless a statute or a court order provides otherwise." In this case, the Court ordered full briefing on the motion for attorney's fees after it was filed. ECF No. 161. Finally, resolving the motion now does not present concerns of judicial economy because counsel for the movants represented at the April 4, 2022 conference that the movants will not seek further attorney's fees in this case. Accordingly, the Court will resolve the motion for attorney's fees, and the movants can renew the motion after the entry of judgment if circumstances change.

declaratory judgment claims. Accordingly, although a final judgment has not yet been entered in this case, the movants are prevailing parties.[3]

In Sleepy's LLC v. Select Comfort Wholesale Corp., 909 F.3d 519, 530-31 (2d Cir. 2018), the Second Circuit Court of Appeals held that the standard set out by the Supreme Court in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545 (2014) for determining whether an award of attorney's fees is appropriate under the Patent Act also applies to claims for attorney's fees under the Lanham Act. Accordingly, to prevail on their motion for attorney's fees, the movants must show that this case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Id. at 554.

Courts applying this standard consider factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of

---

[3] The movants are also prevailing parties with respect to Danelli because the Court held that the movants are entitled to a default judgment against Danelli. See KX Tech LLC v. Dilmen LLC, No. 3:16-cv-745, 2017 WL 2798248, at *6 n.7 (D. Conn. July 13, 2017); Shariff v. Alsaydi, No. 11-cv-6377, 2013 WL 4432218, at *4 (E.D.N.Y. Aug. 15, 2013). However, in their motion for attorney's fees, the movants focus on Brigati's counterclaims, which were briefed by the parties and resolved by the Court in Beata II.

compensation and deterrence." Id. at 554 n.6. "[W]here a party has set forth some good-faith argument in favor of its position, it will generally not be found to have advanced exceptionally meritless claims." Hockeyline, Inc. v. STATS LLC, No. 13-cv-1446, 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017). "[A]lthough Octane Fitness denies that for a case to be exceptional there must be independently sanctionable misconduct, most post-Octane cases awarding fees continue to involve substantial litigation misconduct." Id.; see also Hello I Am Elliot, Inc. v. Sine, No. 19-cv-6905, 2021 WL 1191971, at *7 (S.D.N.Y. Mar. 30, 2021) (asking whether the claimants had improper, ulterior motives in bringing suit). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Octane, 572 U.S. at 554. Of course, "not all unsuccessful litigated claims are objectively unreasonable." Dominick R. Pilla, Architecture-Eng'g P.C. v. Gilat, No. 19-cv-2255, 2022 WL 1003852, at *28 (S.D.N.Y. Mar. 29, 2022).

The movants have failed to establish that this case is exceptional. The movants argue that Brigati's motivations for asserting his counterclaims were improper, but there is no evidence in the record supporting this assertion. Indeed, the only evidence cited by the movants is that Brigati answered truthfully at his deposition that he stopped performing with The

Rascals in 1970. ECF No. 164, at 6. But, as explained in Beata
II, Brigati had a non-frivolous argument that he did not abandon
his interest in the RASCALS mark at least because he continues
to receive royalties from the group's recorded music. See 2022
WL 61862, at *7. There is no evidence suggesting that Brigati
asserted his counterclaims for any reason other than enforcing
the rights that he believed in good faith he had in the RASCALS
mark. Cf. Hello I Am Elliot, 2021 WL 1191971, at *7. In light of
the longstanding dispute over the RASCALS mark and the marketing
of the band members' performances, it was reasonable for Brigati
to assert his purported rights in the mark, especially during
litigation that was initiated by Beata. Accordingly, there is no
evidence of bad faith or an improper ulterior motive in this
case.

The movants also claim that Brigati's counterclaims were
objectively unreasonable and frivolous, but in support of this
argument the movants simply reiterate the reasons the Court
ruled against Brigati. That Brigati's arguments were losing ones
does not mean they lacked an arguable basis in law or fact.
There were factors that favored Brigati's trademark infringement
claims, even though those claims ultimately failed: for example,
the movants did use promotional materials that included
Brigati's image and likeness for a 2018 tour, and Brigati
continues to receive royalties from the band's recorded music.

6

See Beata II, 2022 WL 61862, at *7-8. The movants state that "The Court found that [Brigati's] breach of contract claim was frivolous for failure to allege any damages," ECF No. 164, at 4, but that is not true. The Court did not find Brigati's contract claims to be frivolous; rather, the Court concluded that Brigati's contract claims failed as a matter of law because, among other reasons, Brigati had failed to offer any evidence of damages. See Beata II, 2022 WL 61862, at *5. The Court also exercised its discretion to impose an evidentiary sanction against Brigati pursuant to Rule 37 that prevented him from making any subsequent offer of proof with respect to damages. See id. But the Court's imposition of this evidentiary sanction against Brigati does not mean that Brigati's claims were objectively unreasonable or that the claims lacked an arguable basis in law or fact. While Brigati's claims failed for multiple independent reasons and "this case was not ultimately a close one, [Brigati's] arguments and claims were not so frivolous or objectively unreasonable that no party could see an opening through which the arguments could be squeezed." Dominick R. Pilla, 2022 WL 1003852, at *28.

The other relevant factors also cut against a finding that this case is exceptional. There are no allegations of litigation misconduct. And while the movants argue that deterrence favors an award of fees, this argument is unavailing. The fact that

Brigati's counsel at one time also represented Danelli, who has
stopped participating in this litigation, does not reflect in
any way on Brigati's litigation conduct. The movants also state
that, "This sort of litigation should not be encouraged," ECF
No. 164, at 6, but Beata—one of the movants—initiated this case,
and parties to federal litigation are in fact required to raise
all claims arising out of the transaction or occurrence that is
the subject matter of the opposing party's claims. See Fed. R.
Civ. P. 13(a).

Accordingly, this case is not exceptional within the
meaning of the Lanham Act and the movants are not entitled to
attorney's fees.

## II.

Beata also moves for summary judgment with respect to five
of its six claims.[4] "The court shall grant summary judgment if
the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law." Fed. R. Civ. P. 56(a). The moving party bears the
initial burden of "informing the district court of the basis for
its motion" and identifying the materials in the record that "it
believes demonstrate the absence of a genuine issue of material
fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At

---

[4] In its motion for summary judgment, Beata states that, "[w]ith a subsequent
filing," Beata will request that the Court dismiss its trademark dilution
claim (its fifth cause of action) without prejudice. ECF No. 184, at 11.

the summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Beata's claims implicate the rights of Danelli, against whom Beata is entitled to a default judgment. See Beata I, 2021 WL 195708, at *3-5. A defaulting defendant is deemed to have admitted all well-pleaded factual allegations set forth in the complaint. See S.E.C. v. Razmilovic, 738 F.3d 14, 19 (2d Cir. 2013). "But because a party in default does not admit conclusions of law, the Court must determine whether those allegations establish a sound legal basis for liability." Zhen Ming Chen v. Y Café Ave B Inc., No. 18-cv-4193, 2019 WL 2324567, at *1 (S.D.N.Y. May 30, 2019).

## A.

Beata's first claim seeks a declaration that Beata owns the RASCALS trademark for live performances and the sale of merchandise at those performances. Beata notes that Cavaliere and Cornish transferred to Beata any rights they had in the RASCALS mark for live performances, although Beata does not specify when this transfer was made. Movants' Statement of

Material Undisputed Facts, ECF No. 133 ¶ 33.[5] Beata further notes
that Cavaliere toured as "Felix Cavaliere's Rascals" throughout
the 1990s and 2000s. Id. ¶ 20. Beata argues that Cavaliere is
the only original member of The Rascals who never left the band
and the only band member "to consistently perform music at all."
ECF No. 184, at 10.

Brigati makes several arguments in response, although some
of his arguments were explicitly rejected by the Court in Beata
II.[6] Brigati claims that Beata's pending trademark application
for the RASCALS mark for live performances and related
merchandise is improper because a similar application by
Cavaliere was dismissed with prejudice in 1991. See Kramer
Decl., Ex. 31, ECF No. 146-1. Brigati argues that the prior
dismissal with prejudice precludes the filing of a subsequent,
similar application by an entity that Cavaliere controls. See
Heidsieck & Co. Monopole S.A. v. Piper-Heidsieck, No. 98-cv-
7741, 2001 WL 263029, at *4 (S.D.N.Y. Mar. 15, 2001) (applying
doctrine of res judicata to the withdrawal of an opposition to a
trademark application with prejudice); Miller Brewing Co. v. Coy
Int'l Corp., 230 U.S.P.Q. 675, 678 (T.T.A.B. 1986) (res judicata
prevented applicant from bringing second application that was

---

[5] In support of its motion for summary judgment, Beata relies on the Local
Civil Rule 56.1 statement submitted by the movants in support of their
previous summary judgment motion.
[6] For example, Brigati argues that he did not abandon his rights in the
RASCALS mark, ECF No. 188, at 5, 10–11, even though the Court expressly held
to the contrary, Beata II, 2022 WL 61862, at *7.

similar to a prior application that was withdrawn with prejudice). The Trademark Trial and Appeal Board can address this issue in the first instance in determining whether to grant Beata's trademark application.[7] In any event, it is plain that Beata does not currently have any rights in the RASCALS mark through registration.

Beata appears to argue that Cavaliere had common law trademark rights in the RASCALS mark and that those rights have been assigned to Beata. See, e.g., ECF No. 191, at 2. But nowhere in its papers does Beata establish (1) that Cavaliere had common law trademark rights in the RASCALS mark at the time of the assignment to Beata, or (2) if so, whether the mark has been sufficiently exploited since the assignment of those rights such that Beata continues to hold the rights assigned to it by Cavaliere. "Common law trademark rights derive from 'initial appropriation and use accompanied by an intention to continue exploiting the mark commercially.' 'To prove bona fide usage, the proponent of the trademark must demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory.'" Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co., 897 F.3d 413, 418 (2d Cir. 2018) (quoting La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495

[7] Earlier in this litigation, counsel for Beata represented that this application "may soon be dismissed." ECF No. 151, at 9.

F.2d 1265, 1271-72 (2d Cir. 1974)). While it is plain that
Cavaliere has exploited the RASCALS mark more than the other
original band members, Beata has not demonstrated that Cavaliere
or Beata have an intention to continue exploiting the mark for
live performances.[8] Beata also has not conclusively rebutted
Brigati's argument that Cavaliere abandoned his interest in the
mark. Accordingly, drawing all reasonable inferences against
Beata, there are issues of fact regarding (1) whether Cavaliere
had any common law rights in the RASCALS mark for live
performances to assign to Beata, and (2) whether any such rights
survive today.[9] Accordingly, summary judgment is **denied** with
respect to Beata's first claim.

**B.**

Beata's second claim seeks a declaration that neither
Danelli nor Brigati has any enforceable rights in the RASCALS
mark for live performances. With respect to Brigati, this
declaration follows directly from the Court's conclusions in
Beata II. Brigati has abandoned any trademark rights he had in
the RASCALS mark. 2022 WL 61862, at *7.

---

[8] To the contrary, the movants have indicated throughout this litigation that
this case will mark the end of The Rascals. E.g., ECF No. 151, at 9 ("Beata
filed an intent-to-use application on THE RASCALS for live music and
merchandise, but never filed a statement of use or used the mark. Indeed,
that application may soon be dismissed, and counsel will inform the Court
when it is. These gentlemen will not be playing together again.").
[9] Beata also has not established conclusively that Cornish had any common law
rights in the RASCALS mark to assign to Beata.

The Court has ruled that Beata is entitled to a default judgment against Danelli. Beata I, 2021 WL 195708, at *3-5. Beata's well-pleaded allegations, which are deemed admitted by Danelli, establish that Danelli went at least three consecutive years without using the RASCALS mark.[10] Non-use of a mark for three consecutive years constitutes "prima facie evidence of abandonment." 15 U.S.C. § 1127. Having defaulted, Danelli has put forward no evidence to rebut this "rebuttable presumption of abandonment." See Beata II, 2022 WL 61862, at *7. Accordingly, Danelli—like Brigati—has abandoned any rights he had in the RASCALS mark. Summary judgment is therefore **granted** with respect to Beata's second claim.

                                    C.

Beata's third claim seeks a declaration that Beata has not infringed the rights of Brigati or Danelli in the RASCALS mark. This declaration, like the declaration sought in Beata's second claim, follows directly from the Court's prior decisions. Neither Brigati nor Danelli has any enforceable rights in the RASCALS mark. Accordingly, summary judgment is **granted** with respect to Beata's third claim.

---

[10] See, e.g., First Amended Complaint, ECF No. 9 ¶¶ 17–18 (Danelli left The Rascals in 1972), 33 (Danelli has not played the drums in a concert setting since 2013), 34 (after failed negotiations, Danelli declined to participate in the contemplated 2018 tour).

D.

Beata's fourth claim "seeks declaratory judgment . . . that use of the RASCALS for live concert performances and the sale of merchandise at such live concert performances does not constitute false designation of origin." First Amended Complaint ("FAC"), ECF No. 9 ¶ 64. Because neither Brigati nor Danelli has any enforceable rights in the RASCALS mark, and for the other reasons explained in Beata II, Beata is entitled to a declaration that its use of the RASCALS mark for live concert performances and the sale of merchandise at those performances does not constitute false designation of origin with respect to Brigati or Danelli. The Court has no occasion to consider the rights of non-parties. Summary judgment on this claim is therefore **granted**, but the declaration is only applicable to Brigati and Danelli.

E.

Beata notes that its fifth claim should be dismissed without prejudice. ECF No. 184, at 2 n.2, 11. The claim is therefore dismissed without prejudice.

F.

Beata's sixth claim seeks "an order declaring and adjudging the rights of the parties when CAVALIERE and CORNISH play under the name 'The Rascals,' vis-à-vis DANELLI's claimed rights in under [sic] the 1990 Settlement Agreement and BRIGATI's claimed

14

rights." FAC ¶ 76. Beata moves for summary judgment on this
claim but states in its moving brief that, "if the Court wishes
to rule on this issue, [Beata] would suggest a limited ruling
that there is nothing in the 1990 Settlement Agreement that
precludes Cavaliere and Cornish, or their assignee(s) from
playing live as The Rascals." ECF No. 184, at 11-12. This
statement perhaps stems from Beata's recognition that "The
judicial power does not extend to abstract questions and that
[c]laims based merely upon assumed potential invasions of rights
are not enough to warrant judicial intervention." Pub. Serv.
Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 242 (1952).

The Court concluded in Beata II that Brigati's breach of
contract claim with respect to the 1990 agreement failed as a
matter of law because (1) Brigati failed to offer any evidence
of damages, and (2) Brigati was neither a party to the 1990
agreement nor an intended third-party beneficiary of that
agreement. See 2022 WL 61862, at *5. Brigati therefore has no
enforceable rights arising from the 1990 agreement.

Beata puts forward no arguments or analysis with respect to
Danelli's rights under the 1990 agreement. However, before he
stopped participating in this litigation, Danelli asserted a
breach of contract claim against Cavaliere and Cornish with
respect to the 1990 agreement, and that claim and the rest of
Danelli's claims were dismissed with prejudice for failure to

15

prosecute. See Third-Party Complaint, ECF No. 31, at 6; Beata I, 2021 WL 195708, at *3. Because a dismissal for failure to prosecute operates as an adjudication on the merits, see Fed. R. Civ. P. 41(b); James v. John Jay College, No. 19-cv-644, 2020 WL 1911211, at *4 (S.D.N.Y. Apr. 20, 2020), res judicata would prevent Danelli from asserting against Cavaliere or Cornish any claim relating to the 1990 agreement that was, or could have been, raised in this action. See id. at *3.[11]

Accordingly, summary judgment on Beata's sixth claim is **granted** with respect to Brigati, and is **granted** with respect to Danelli but only to the extent that Danelli may not assert any claim against Cavaliere or Cornish relating to the 1990 agreement that was, or could have been, raised in this action.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the movants' motion for attorney's fees is **denied,** and Beata's motion for summary judgment is **granted in part and denied in part.** In particular, summary judgment is **denied** as to Beata's first claim. Summary judgment is **granted** with respect to Beata's second and third claims. Summary

---

[11] Res judicata would not appear to bar a claim by Danelli concerning conduct that postdates the commencement of this action if that conduct "can support a cause of action on its own." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 503 (2d Cir. 2014); see James, 2020 WL 1911211, at *4.

judgment is also **granted** with respect to Beata's fourth and sixth claims, but only to the extent explained above. Beata's fifth claim is **dismissed without prejudice.**

Beata should notify the Court by May 16, 2022 whether it intends to proceed to trial on its first claim. If Beata does not intend to proceed to trial, it should submit a proposed judgment with respect to Brigati and Danelli by May 16, 2022.

The Clerk is directed to close Docket Nos. 160 and 184.

**SO ORDERED.**

Dated:    **New York, New York**
          **May 9, 2022**

                                    John G. Koeltl
                            **United States District Judge**

17